UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHARON RODRIGUEZ,<br><br>                Plaintiff,<br><br>  v.<br><br>G&M INVESTMENTS, INC.,<br>PHIL MEISINGER, LLC, PHILLIP C.<br>MEISINGER III, SHARA S. MEISINGER,<br>NATIONAL FINANCIAL COMPANY,<br>JOE GIGLIETTI, STEWART TITLE<br>COMPANY OF ILLINOIS, INC., LEHMAN<br>BROTHERS BANK FSB and<br>DOES 1 through 100,<br><br>                Defendants | Case No. _____<br> FILED<br>APRIL 10, 2008         YM<br>08CV2033<br>JUDGE CASTILLO<br>MAGISTRATE JUDGE COLE<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Sharon Rodriguez, by and through her attorneys, Berry & Maxson LLC and Kamensky Rubinstein Hochman & Delott, LLP**,** as and for her Complaint, alleges as follows:

## INTRODUCTION

1.  This predatory lending case involves a commonly used mortgage foreclosure rescue scam.  While the details often vary, the scams are perpetrated by unscrupulous companies and individuals who target homeowners facing foreclosure by promising to save their homes under the guise of loaning them money to stop the foreclosure.  Instead, the con artists gain ownership of the home for themselves for much less than actual value and then evict the unfortunate family and sell the home for its real value – in the process stealing the homeowner's equity, charging unreasonable and undisclosed fees, misappropriating cash payments and threatening to leave the victims homeless in the process.  Defendants here have unlawfully engaged in exactly this scam targeting Plaintiff's home and financial savings, thereby causing great injury to Plaintiff.  This practice is illegal, immoral and unconscionable.

## JURISDICTION

2.      This Court has federal question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. §1367.

## VENUE

3.      Venue lies in this Northern District of Illinois pursuant to 28 U.S.C. §1391(b).

## PARTIES

4.      Plaintiff Sharon Rodriguez ("Plaintiff") is an individual who lives at 5701 North Major Avenue, Chicago, Illinois, 60646 (the "subject property"). She has lived and raised her family at this address continuously for almost 32 years, and she lives and resides in the property to this day.

5.      Defendant G&M Investments, Inc., is an Illinois corporation, with its principal place of business located at 27475 Ferry Road, Warrenville, Illinois, 60555. The registered agent of this corporation is Andrea Schreiber, with its registered office at 125 Water Street, Naperville, Illinois, 60540. Upon information and belief Joseph Giglietti is the president of G&M Investments, Inc., and Phillip C. Meisinger, III, is the secretary of G&M Investments, Inc.

6.      Defendant Phil Meisinger, LLC, is an Illinois limited liability company, with its principal place of business located at 2978 Kendridge Lane, Aurora, Illinois, 60504, and with its registered office at 125 Water Street, Naperville, Illinois, 60540. Among other acts set forth throughout this Complaint, on or about January 5, 2006, Phil Meisinger, LLC assisted Defendants Phillip C. Meisinger, III, and Shara S. Meisinger to fraudulently take title to Plaintiff's subject property and, at the same time, obtain a loan from and gave a first mortgage to Defendant Lehman Brothers Bank FSB in the amount of $162,500.00 on the subject property. In addition, Phil Meisinger LLC assisted Phillip C. Meisinger, III, and Shara S. Meisinger to fraudulently commence a non-payment action in the Circuit Court of Cook County, Illinois,

Municipal Department, 2nd District, Case No. 20071711421 and sought to evict her in and through that proceeding.

7. Defendant Phillip C. Meisinger, III, is an Illinois resident, located at 2978 Kendridge Lane, Aurora, Illinois, 60504. Among other acts set forth throughout this Complaint, on or about January 5, 2006, Phillip Meisinger fraudulently took title to Plaintiff's property and misappropriated other cash and, at the same time, obtained a loan from and gave a first mortgage to Lehman Brothers Bank FSB in the amount of $162,500.00 on the subject property. Upon information and belief, that mortgage remains outstanding.

8. Defendant Shara S Meisinger is an Illinois resident, located at 2978 Kendridge Lane, Aurora, Illinois 60504. Among other acts set forth throughout this Complaint, on or about January 5, 2006, Mrs. Meisinger fraudulently took title to Plaintiff's property and, at the same time, obtained a loan from and gave a first mortgage to Lehman Brothers Bank FSB in the amount of $162,500.00 on the subject property. Upon information and belief, that mortgage remains outstanding.

9. Defendant Joe Giglietti is an Illinois resident, located at 866 Middlebury Avenue, Aurora, Illinois 60504.

10. Defendant National Financial Company., is or was an Illinois corporation. The registered agent of this corporation is Konstantin B. Selikhov, with its registered office at 8928 Steven Dr., Ste. 1B, Des Plaines, Illinois, 60016.

11. Defendant Stewart Title Company Of Illinois, Inc., is an Illinois corporation, with its principal place of business located at 2055 West Army Trail Road, #110, Addison, Illinois, 60101. The registered agent of this corporation is Leigh Curry, with its registered office at 2055 West Army Trail Road, #110, Addison, Illinois, 60101.

12. Anthony P. Andreano and the law firm of Andreano & Lyons (collectively "Andreano") are attorneys licensed to practice law in the State of Illinois with an address at 58 North Chicago Street, Suite 509, Joliet, Illinois 60432. Among other acts set forth throughout this Complaint, Andreano prepared the fraudulent deed purporting to transfer title of the subject property from Plaintiff to Phillip Meisinger and Shara Meisinger on or about January 5, 2006, as

well and the improper closing statements dated January 4, 2006. Andreano is treated as an unsued co-conspirator by this Complaint, and Plaintiff reserves the right to amend the Complaint to add Andreano as a party as an additional investigation is made and completed.

13.  Upon information and belief, Defendant Lehman Brothers Bank FSB, is a foreign corporation doing business in Illinois. Also upon information and belief, Lehman Brothers is the holder of the new first mortgage on the subject property originally in the amount of $162,500.00.

14.  Defendants "DOES" 1 through 100 are fictitious names representing individuals or legal entities, if any, having or claiming an interest in, or lien upon, the subject property or fictitious names representing other individuals or legal entities who engaged in the wrongs and schemes at issue in this lawsuit but who are not currently known. Accordingly, Plaintiff sues these unknown Defendants as DOES 1 through 100, and reserves the right to add them by name as their identities and specific involvement is uncovered in discovery and through investigation.

## STATEMENT OF FACTS

15.  Plaintiff and her husband purchased her home at 5701 North Major Avenue, Chicago, Illinois, in April 1976 – more than 32 years ago. She has lived in the home continuously since that time. Prior to the purported transfer of title to the subject property on or about January 5, 2006, Plaintiff had a mortgage with Hartford Financial Services, Inc. ("Hartford")) with a remaining principal balance of approximately $188,719.56. The mortgage appears to have been subsequently transferred to Ocwen Bank and then to Washington Mutual. Plaintiff's payments on this mortgage were approximately $1,074.00 a month. At the time, it is estimated that the subject property had a fair market value between $318,000 and $350,000.

16.  In 2005, Plaintiff fell several months behind on the payments on the Hartford mortgage. As a result, Hartford or its successors initiated foreclosure proceedings against her. Plaintiff attempted to reach a settlement but was unsuccessful. By October of 2005, Plaintiff was facing the imminent loss of her home and was seeking a way to avoid such an outcome. As her settlement discussions with Hartford continued to deteriorate, the matter became more desperate.

17.     Plaintiff learned of National Financial Co. through an advertisement she received in the mail. The advertisement represented that the company could provide help to persons facing mortgage foreclosure problems. Needing a new loan to avoid the Hartford foreclosure, Plaintiff contacted National Financial Co., and its agent Phil Grant, on or about October 31, 2005. Plaintiff explained that she was behind on her mortgage and was looking for a way to save her home from foreclosure. Phil Grant told Plaintiff that in order for her to stop the foreclosure and pay off her existing mortgage with Hartford, National Financial Co. had contacts with a number of "investors" who might be willing to put up the money to help her save her home. National Financial Co. and Phil Grant called this the "Stop Sale and Buy Back Program." Neither Phil Grant nor National Financial Co. explained any of the details of this program, nor did they explain that it would require Plaintiff to sign over the deed to the subject property. Instead, each cryptically stated that the procedures to be used were "just a formality" that would allow Plaintiff to "stop the foreclosure" and the "keep her home." Plaintiff was told she would be required to make monthly payments to the "investors," which would be used to make monthly payments on this new mortgage obtained by the investors until Plaintiff could get a new mortgage for her home. She was told this was just a temporary arrangement until she could get back on her feet and obtain new financing for the subject property. Phil Grant put Plaintiff in contact with Joseph Giglietti as a potential "investor," who in turn brought Phil Meisinger in as an investor.

18.     Hartford (or its successor) was scheduled to foreclose on the subject property on or about January 6, 2006. As Plaintiff's foreclosure sale was approaching, she asked Joe Giglietti to set up a time to close the deal with the "investors" so she could stop the foreclosure and keep her house. Joe Giglietti first arranged a "closing" to take place at Stewart Title Company of Illinois during the last few days of December 2005. At that time, Plaintiff was again told that this was all "just a formality" to allow her to keep her house. Despite her inquiries, she was not, however, told how the deal would actually work or provided copies or drafts of any proposed contracts or descriptions of how "Stop Sale and Buy Back Program" would work.

19. The closing was scheduled in late December 2005, approximately one week before the Hartford foreclosure was scheduled to occur. At the last minute, however, Defendants or some of them caused the date and time of the proposed closing to be delayed until January 5, 2006, at 3:00 p.m. – mere hours before the Hartford foreclosure was scheduled to take place. Plaintiff was not consulted about this scheduling change, and moving it closer to the Hartford foreclosure put stress and considerable pressure on her to find a way to keep her house. Again, she was told this would not be a problem, that this closing was "just a formality," and that she would be able to keep her house. She was repeatedly told not to worry and that everything would be fine. As before, Plaintiff was not told how the deal would actually work, nor was she provided copies or drafts of any proposed contracts or details about the "Stop Sale and Buy Back Program." Plaintiff repeatedly called Phil Grant and National Financial Co. to obtain this information, ask questions and receive additional guidance on the process by which she could save her home, but her phone calls were not returned. In the mean time, the foreclosure date was rapidly approaching.

20. Plaintiff appeared in person at the offices of Stewart Title Company of Illinois on January 5, 2006, at around 3:00 p.m., in order to complete the transactions related to the "Stop Sale and Buy Back Program" the she was told would be necessary for her to save her house. Also present were at this meeting at Stewart Title Company of Illinois were Anthony Andreano, Philip Meisinger, III, Shara S. Meisinger, Joseph Gigletti, and a closing agent from Stewart Title. *At this "closing" meeting, Plaintiff was not given a contract to sign, review or approve.* Instead, Plaintiff was told by Defendants that this process was necessary for her to prevent the foreclosure and to keep her house. She was again told not to worry. No one at the meeting, however, ever explained what the "Stop Sale and Buy Back Program" process was, what the terms of the arrangement would be, or that it was actually a permanent sale of the property. Plaintiff was never told that she could or should consult with a lawyer. At the January 5, 2006 meeting, Plaintiff was presented with what she now understands to be a warranty deed transferring the subject property to Defendants Philip Meisinger, III, and Shara S. Meisinger for the supposed consideration of "TEN DOLLARS," but at the time she was told and understood it

to be another of the "formalities" that Defendants said were necessary for her to stop the foreclosure and to keep her family home. Plaintiff did not understand, and was not told, that she was signing over the deed to her house. Under these conditions, Plaintiff signed this paper, upon information and belief prepared by Andreano.

21.    As in the prior discussions, Plaintiff was told during the January 5, 2006 meeting that this was "just a formality," that she should not worry, that this was a temporary arrangement, and that by signing the documents the investor – now identified to be Defendant Phil Meisinger, LLC – would put up the money so she could keep her house and that she would have time secure a new loan to pay off the investor.

22.    Astonishingly, on January 29, 2006 – more than three weeks *after* the closing – Plaintiff was finally shown *for the first time* and told to sign a 40-page document she had never seen before, which was entitled "Real Estate Equity Sharing Agreement." Plaintiff was not given adequate time to review the document, was not represented by counsel, was not told to consult with counsel and was given no reasonable opportunity to do any of these. The cover page of the 40-page *ex post facto* contract identified Phil Meisinger, LLC as an "Investor," and while it summarily describes the lengthy terms contained therein as "Equity Sharing Title" and an "Equity Ownership Split," the cover page of the document is not entitled "Sales Contract" and does not state that it is an agreement to permanently sell the subject property. Again, she was told it was just a formality. When Plaintiff asked why Joseph Giglietti and Philip Meisinger had not presented this contract to her sooner, they said they had been too busy to do so.

23.    On both January 5 and January 29, 2006, Plaintiff was not told she was signing documents for the purpose of selling the subject property. Instead, as always, she was told only that the process was a formality and was necessary for her to stop the foreclosure and to allow time (up to 2 years) for her to get a new mortgage in order to keep her home. Plaintiff did not receive a completed HUD-l settlement statement or other required documents at or before the January 5, 2005 meeting at Stewart Title Company of Illinois. If fact, Plaintiff never received a full set of closing documents and required disclosures in connection with the transaction handled by Stewart Title of Illinois.

24. The January 5, 2006 meeting concluded between 5:30 p.m. and 6:00 p.m. Plaintiff was told by Stewart Title she was to receive a check in connection with the transaction, but she did not know why and she did not know the amount. Because of the late hour, however, Plaintiff was told the check could not be cut that day. Defendants put a blank piece of white paper in front of Plaintiff and demanded that she sign it to indicate her consent to allow Phil Meisinger, LLC, or Phil Meisinger to pick up the check on her behalf the next morning. Plaintiff specifically asked Defendants to clarify that she was only giving permission for Phil Meisinger, LLC, or Phil Meisinger to pick up the check on her behalf, and not to negotiate, cash, keep or use it. Having received that assurance, Plaintiff signed the blank sheet of white paper as demanded by Defendants.

25. Upon information and belief, Phil Meisinger, LLC, Phil Meisinger, G&M Investments, Inc. and Joseph Giglietti have misappropriated this check for their own use, and have had it cashed, despite having no legal right to do so. Plaintiff understands that this check was in the amount of $44,087.65. Plaintiff did not ever receive or endorse the check, nor did she ever receive any of its proceeds.

26. Upon information and belief, G&M Investments, Inc., Phil Meisinger, LLC, Phillip C. Meisinger, III, Shara S. Meisinger, Joseph Giglietti, National Financial Company, Anthony P. Andreano, and DOES 1 through 100 have engaged in a combinations, conspiracies and agreements to illegally and improperly, and without full disclosure, split and divide the spoils of this scam between and among themselves, in the form of sham fees for service, kick-backs, profit sharing and other methods. Upon information and belief, they have engaged in this conduct repeatedly, willfully and wantonly and with complete disregard for others such that their violations should be subject to punitive and exemplary damages.

27. On or about May 30, 2007, Defendants Phillip Meisinger and Shara Meisinger, represented by Andreano, commenced a summary proceeding for Phil Meisinger, LLC, Phillip C. Meisinger, III, and Shara S. Meisinger for a non-payment action against Plaintiff in the Circuit Court of Cook County, Illinois, Municipal Department, 2nd District, Case No. 20071711421 and seeking to evict her in that proceeding. In addition, in recent weeks a real

8

estate agent has been calling Plaintiff at Phillip Meisinger's direction claiming that she intends to inspect the house for the purpose of putting it on the market for sale. Plaintiff is in imminent danger of being thrown out of her home of 32 years, leaving her homeless. As a result of Defendants' fraudulent and illegal scheme, Plaintiff has lost title to the family home in which she has resided for 32 years and was unlawfully deprived and stripped of significant equity. Plaintiff's indebtedness, prior to falling prey to the deed-theft scam, was approximately $188,719.56 on a house believed to be worth between $318,000 and $350,000. As a result of Defendants' conduct, Plaintiff has been defrauded out of more than $100,000 of equity.

28.   Upon information and belief, at all times relevant to this Complaint Defendants, and each of them, were acting as agents, servants, employees, and/or representatives of each other, and were acting within the course and scope of their agency and employment and with the full knowledge, consent, permission, authorization and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint.

29.   Upon information and belief, each of the Defendants, including Does 1 through 100, have participated as members of an alleged trust or combination, or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of a conspiracy and other violations of law. Each of the Defendants acted both individually and in alignment with other Defendants with full knowledge of their respective wrongful conduct. As such, the Defendants conspired together, building upon each other's wrongdoing, in order to accomplish the acts outlined in this Complaint. In addition to being sued in their individual capacity, Defendants are also sued as principals, participants and aiders and abettors in the wrongful conduct complained of, and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein.

30.   Upon information and belief, with the exception of Stewart Title Company of Illinois, the Defendants who are corporate or legal entities are, in fact, mere alter egos and sham corporate veils for the real owners, actors and participants hiding behind them.

# FIRST CAUSE OF ACTION

## Against all Defendants

## EQUITABLE MORTGAGE

31.     Plaintiff repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

32.     The deed transfer from Plaintiff to Phillip Meisinger and Shara Meisinger, although a conveyance of property on its terms, must be considered a mortgage as a matter of law.  Under §765 ILCS 905/5, "[a] deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage."  Among other things, the language of the Real Estate Equity Sharing Agreement, the representations, promises and other statements by Defendants that the transaction was temporary and "just a formality," and that Plaintiff would be able to secure another replacement mortgage and keep her house, and Plaintiff's continued occupation of the subject property demonstrates that the deed conveying the subject property was intended as a mortgage and not an absolute conveyance.

33.     To establish that a deed conveyance was meant as a security, examination may and must be made of oral testimony bearing on the intent of the parties and to a consideration of the surrounding circumstances and acts of the parties.

34.     Defendants' acts and statements evidenced their intent to mortgage Plaintiff's home.  As described above, Defendants repeatedly stated that the transaction was "just a formality" and that Plaintiff would be able to secure another replacement mortgage and keep her house.  Defendants promised Plaintiff they would help her save her property from foreclosure and stay in her home of many years.

35.     Accordingly, the deed transfer from Plaintiff to Phillip Meisinger and Shara Meisinger constitutes an equitable mortgage by which Phillip Meisinger and Shara Meisinger took a security interest in Plaintiff's home.  It does not constitute a valid transfer of title under Illinois law.

36.     Plaintiff therefore requests a declaration that the January 5, 2006 deed transfer was a mortgage, and that she is entitled to all the rights and remedies accorded to mortgagors under Federal and State Law.  Plaintiff further requests a declaration that any security interest that Defendants purported to transfer to others, which were not bona fide purchasers or assignees, be deemed void.

## SECOND CAUSE OF ACTION

**Against G&M Investments, Inc., Phil Meisinger, LLC, Phillip C. Meisinger III, Shara S. Meisinger, National Financial Company, Joe Giglietti, Stewart Title Company Of Illinois, Inc.**

### TRUTH IN LENDING ACT

37.     Plaintiff repeats and realleges paragraphs 1 through 37 as though fully set forth herein.

38.     Upon information and belief at the time of the subject transaction, Defendants acted as creditors who regularly engaged in the making of (equitable) mortgage loans, payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise. Accordingly, Defendants are subject to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., and its implementing regulations, Federal Reserve Board Regulation Z, 12 C.F.R. § 226.

39.     As a result of the subject transaction, Defendants acquired an interest in Plaintiff's home that secures payment or performance of an obligation.

40.     Upon information and belief, in the course of the January 5, 2005 consumer credit transaction described above, Defendants violated the disclosure and rescission requirements of TILA and Regulation Z in the following and other respects:

a.     By failing to disclose properly and accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 226.18(b);

11

    b.    By failing to disclose properly and accurately the finance charges and fees payable to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C. § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) & 226.4;

    c.    By failing to disclose properly and accurately the "annual percentage rate" in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e);

    d.    By failing to disclose properly and accurately the "total of payments" in violation of 15 U.S.C. § 1638(a)(5) and 12 C.F.R. § 226.18(h);

    e.    By failing to disclose properly and accurately the number, amount, and due dates or period of payments scheduled to repay the obligation in violation of 15 U.S.C § 1638(a)(6) and 12 C.F.R. § 226.18(g);

    f.    By failing to disclose that a security interest was taken in the subject property in violation of 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226. 18(m);

    g.    By failing to provide two copies of the notice of the right to rescind and an accurate date for the expiration of the rescission period in violation of 15 U.S.C. § 1635 and 12 C.F.R. § 226.23(b);

    h.    By failing to delay disbursement of the proceeds until after the expiration of the rescission period in violation of 12 C.F.R. § 226.23(c); and

41.    The above violations of the Truth in Lending Act give Plaintiff an extended right to rescind the equitable loan held by Defendants pursuant to 15 U.S.C §§ 1635 & 1641 (d)(l) and 12 C.F.R. § 226.23.

42.    In addition, Defendants are liable to Plaintiff for: (a) the return of any money or property that has been given to anyone in connection with the transaction and the termination of Defendants' security interest in the property; (b) actual damages in an amount to be determined at trial; (c) statutory damages as provided by 15 U.S.C. § 1640; and (d) costs and disbursements.

# THIRD CAUSE OF ACTION

### Against G&M Investments, Inc., Phil Meisinger, LLC, Phillip C. Meisinger III, Shara S. Meisinger, National Financial Company, Joe Giglietti, Stewart Title Company Of Illinois, Inc.

### REAL ESTATE SETTLEMENT PROCEDURES ACT

43. Plaintiff repeats and realleges paragraphs 1 through 42 as though fully set forth herein.

44. The January 5, 2006 equitable mortgage transaction described above, in which Plaintiff allegedly deeded her property to Phillip Meisinger and Shara Meisinger, is a loan secured by a first lien on a one-family residential property, the proceeds of which were used to pay off Plaintiff's pre-existing mortgages.

45. Upon information and belief, Defendants are creditors who make or invest in (equitable) mortgage loans aggregating more than $1,000,000.00 per year.

46. The January 5, 2006 equitable mortgage transaction described above is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1), and therefore is subject to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*.

47. Defendants violated RESPA with respect to Plaintiff's loan transaction by: (a) giving or accepting kickbacks or other things of value to and from the Defendants in violation of 12 U.S.C § 2607(a) and 24 C.F.R. § 3500.l4(c); (b) giving a portion, split, or percentage of charges made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed, in violation of 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.l4(c); and (c) failing to deliver a completed HUD-l Settlement Statement as required by 24 C.F.R. § 3500.10.

48. Defendants are liable to Plaintiff for: (a) actual damages, trebled under 12 U.S.C. § 2607(d)(2); and (b) costs and disbursements.

## FOURTH CAUSE OF ACTION

**Against G&M Investments, Inc., Phil Meisinger, LLC, Phillip C. Meisinger III, Shara S. Meisinger, National Financial Company, Joe Giglietti, Stewart Title Company Of Illinois, Inc.**

### FRAUD

49. Plaintiff repeats and realleges paragraphs 1 through 48 as though fully set forth herein.

50. Defendants fraudulently and knowingly induced Plaintiff to enter the January 5, 2006 equitable mortgage/deed transfer by making intentional misrepresentations and/or failing to provide material information. Among other things:

   a. Defendants misrepresented to Plaintiff that they were specialists in helping people avoid foreclosure in order to keep their homes;

   b. Defendants misrepresented to Plaintiff that they would help her keep her home, while intending to strip Plaintiff of title and tens of thousands of dollars in equity;

   c. Defendants falsely represented the nature and significance of certain documents presented to Plaintiff for signature;

   e. Defendants failed to inform Plaintiff that her property had been transferred to Defendants Phillip Meisinger and Shara Meisinger and that they did not intend to return the property to her;

   d. Defendants misrepresented that she was signing her name to a blank piece of paper to allow only the $44,087.65 check in her name to be picked up by Phil Meisinger, LLC or Phillip Meisinger on January 6, 2008, when in fact Defendants intended to and did misappropriate that check and the funds from that check.

51. In addition, Defendants also knowingly and fraudulently conveyed or caused to be conveyed a $162,500.00 security interest in Plaintiff's property to Lehman Brothers Bank FSB by making intentional misrepresentations and/or failing to provide material information.

52. Plaintiff suffered serious injury as the proximate result of her reasonable reliance on Defendants' intentional misrepresentations and failures to disclose. Plaintiff's injuries include,

but are not limited to, having her deed stolen from her; having a substantial lien placed on her home in the form of a mortgage; facing the uncertainty of eviction; loss of rental income and other financial opportunities; the skimming and stripping of her equity in the subject property, mental and physical anguish; and other damages.

53. Defendants' actions were willing, intentional and knowing, rendering the January 2006 equitable loan/deed transfer and the Lehman Brothers Bank mortgages null and void.

54. In addition, Defendants are liable to Plaintiff for: (a) actual damages; (b) punitive damages, and (c) costs and disbursements.

## FIFTH CAUSE OF ACTION

### Against G&M Investments, Inc., Phil Meisinger, LLC, Phillip C. Meisinger III, Shara S. Meisinger, National Financial Company, Joe Giglietti, Stewart Title Company Of Illinois, Inc.

### CIVIL CONSPIRACY TO COMMIT FRAUD

55. Plaintiff repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

56. Defendants entered into an agreement to induce Plaintiff to enter the January 5, 2006 equitable mortgage/deed transfer transaction and to re-mortgage Plaintiff's property

57. Defendants intentionally, knowingly and willfully participated in this scheme by committing overt acts and making misrepresentations and/or failing to provide material information, in furtherance of the agreement.

58. Plaintiff suffered serious injury as the proximate result of her reliance on Defendants' misrepresentations and omissions.

59. Said conspiracy renders void and unenforceable the January 2006 equitable loan/deed transfer and Lehman Brothers Bank mortgages.

60. In addition, Defendants are liable to Plaintiff for: (a) actual damages; (b) punitive damages; and (c) costs and disbursements.

## SIXTH CAUSE OF ACTION

**Against G&M Investments, Inc., Phil Meisinger, LLC, Phillip C. Meisinger III, Shara S. Meisinger, National Financial Company, Joe Giglietti**

### CONVERSION

61. Plaintiff repeats and realleges paragraphs 1 through 61 as though fully set forth herein.

62. Plaintiff owned and had a right to possession of the proceeds of the January 2006 equitable mortgage/deed transfer, and all subsequent security interests in the property.

63. Upon information and belief, Defendants acted to exclude Plaintiff's rights to the funds and to share those proceeds among themselves.

64. Defendants are liable to Plaintiff for; (a) actual, compensatory, and punitive damages; and (b) costs and disbursements.

### RESERVATION OF RIGHTS

65. In order to protect her rights quickly and to avoid suffering further prejudice, Plaintiff has filed the Complaint based on the above-listed causes of action. Plaintiff is continuing her investigation into the facts and gives notice that she will seek leave to amend the Complaint to include claims under the Illinois Mortgage Rescue Fraud Act, §765 ILCS 940, and the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §1961 – 1968, if appropriate.

### REMEDIES REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Declare that the January 2006 deed transfer was a mortgage, and that Plaintiff is entitled to all the rights and remedies accorded to mortgagors under Federal and State Law. Plaintiff asks the Court to further declare that any security interest Defendants purported to transfer to others, which were not bona fide purchasers or assignees, be deemed void.

      b.  Rescind the January 5, 2006, and January 29, 2006 mortgage loan transactions; void the deed that transferred title from Plaintiff to Phillip Meisinger and Shara Meisinger; and terminate any security interest in Plaintiff's property created by the transaction;

      c.  Award actual damages in an amount to be determined at trial;

      d.  Award punitive and exemplary damages as set forth above;

      e.  Award attorney fees and the reasonable costs of this action as set forth above;

      f.  Award and such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff requests and demands a trial by jury on all issues as allowed under the United States Constitution and the rules of this Court.

Dated: April 10, 2008

Respectfully submitted,

/s/   Michael B. Brohman

Michael B. Brohman (3124085)
Kamensky Rubinstein Hochman & Delott, LLP
7250 North Cicero Avenue, Suite 200
Lincolnwood, Illinois 60712-1693
Telephone:  (847) 982-1776

and

Robert P. Berry (MO # 46236)
Berry & Maxson LLC
*Pro Hac Vice Application Filed*
17295 Chesterfield Airport Road, Suite 209
Chesterfield, Missouri 63005
Telephone:   (636) 777-7870
Facsimile:    (314) 480-5884
rberry@berrymaxson.com

Attorneys for Plaintiff Sharon Rodriguez