## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| SHARON RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 2033 |
| | ) |
| G&M INVESTMENTS, INC., PHIL MEISINGER, | ) |
| LLC, PHILLIP C. MEISINGER III, SHARA S. | ) |
| MEISINGER, NATIONAL FINANCIAL | ) Judge Ruben Castillo |
| COMPANY, JOE GIGLIETTI, STEWART TITLE | ) Magistrate Judge Jeffrey Cole |
| COMPANY OF ILLINOIS, INC., LEHMAN | ) |
| BROTHERS BANK FSB, DOES 1 through 100, | ) |
| | ) |
| Defendants. | ) |

### DEFENDANT LEHMAN BROTHERS BANK, FSB'S MOTION FOR
### LEAVE TO FILE ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant Lehman Brothers Bank, FSB, by its attorneys, Robert F. Rabin and the law firm

of Robbins, Salomon & Patt, Ltd., hereby seeks leave to file the attached Defendant Lehman

Brothers Bank, FSB's Answer and Affirmative Defenses to Complaint, *instanter*

LEHMAN BROTHERS BANK, FSB


By:  /s/ Robert F. Rabin
       One of its Attorneys

Robert F. Rabin
Robbins, Salomon & Patt, Ltd.
25 E. Washington Street, 10th Floor
Chicago, Illinois 60602
(312) 782-9000

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHARON RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 2033 |
| | ) |
| G&M INVESTMENTS, INC., PHIL MEISINGER, | ) |
| LLC, PHILLIP C. MEISINGER III, SHARA S. | ) |
| MEISINGER, NATIONAL FINANCIAL | ) Judge Ruben Castillo |
| COMPANY, JOE GIGLIETTI, STEWART TITLE | ) Magistrate Judge Jeffrey Cole |
| COMPANY OF ILLINOIS, INC., LEHMAN | ) |
| BROTHERS BANK FSB, DOES 1 through 100, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT LEHMAN BROTHERS BANK, FSB'S
ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT**

Defendant Lehman Brothers Bank, FSB ("Lehman"), by its attorneys, Robert F. Rabin and

the law firm of Robbins, Salomon & Patt, Ltd., for its Answer and Affirmative Defenses to

Complaint (the "Complaint"), states and answers as follows:

"1.     This predatory lending case involves a commonly used mortgage

foreclosure rescue scam.  While the details often vary, the scams are perpetrated by

unscrupulous companies and individuals who target homeowners facing foreclosure

by promising to save their homes under the guise of loaning them money to stop the

foreclosure.  Instead, the con artists gain ownership of the home for themselves for

much less than actual value and then evict the unfortunate family and sell the home

for its real value – in the process stealing the homeowner's equity, charging

unreasonable and undisclosed fees, misappropriating cash payments and threatening

to leave the victims homeless in the process.  Defendants here have unlawfully

engaged in exactly this scam targeting Plaintiff's home and financial savings, thereby

causing great injury to Plaintiff.    This practice is illegal, immoral and unconscionable."

**ANSWER:**

For its answer to Paragraph 1 of Count I of the Complaint, Lehman admits that Plaintiff describes a practice commonly known as a mortgage rescue scam, but states that it is without sufficient knowledge to form a belief as to whether such a scam was perpetrated upon Plaintiff and, therefore, neither admits nor denies the same but demands strict proof thereof.  Answering further, Lehman denies that it engaged in any unlawful activity relating to the real property that is the subject of this lawsuit, and denies the remaining allegations therein.

"2.    This Court has federal question jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§1331 and 1343.  This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. §1367."

**ANSWER:**

For its answer to Paragraph 2 of Count I of the Complaint, Lehman admits that Plaintiff asserts claims involving federal questions and that the only claim directed against Lehman is a pendent state law claim to which supplemental jurisdiction could attach pursuant to 28 U.S.C. §1367, but denies that subject matter jurisdiction independently attaches pursuant to 28 U.S.C. §1343, and denies the remaining allegations therein.

"3.    Venue lies in this Northern District of Illinois pursuant to 28 U.S.C. §1391(b)."

**ANSWER:**

For its answer to Paragraph 3 of Count I of the Complaint, Lehman admits the allegations therein.

"4.    Plaintiff Sharon Rodriguez ("Plaintiff") is an individual who lives at 5701 North Major Avenue, Chicago, Illinois, 60646 (the "subject property"). She has lived and raised her family at this address continuously for almost 32 years, and she lives and resides in the property to this day."

**ANSWER:**

For its answer to Paragraph 4 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"5.    Defendant G&M Investments, Inc., is an Illinois corporation, with its principal place of business located at 27475 Ferry Road, Warrenville, Illinois, 60555. The registered agent of this corporation is Andrea Schreiber, with its registered office at 125 Water Street, Naperville, Illinois, 60540. Upon information and belief Joseph Giglietti is the president of G&M Investments, Inc., and Phillip C. Meisinger III, is the secretary of G&M Investments, Inc."

**ANSWER:**

For its answer to Paragraph 5 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"6.    Defendant Phil Meisinger, LLC, is an Illinois limited liability company, with its principal place of business located at 2978 Kendridge Lane, Aurora, Illinois, 60504, and with its registered office at 125 Water Street, Naperville, Illinois, 60540. Among other acts set forth throughout this Complaint, on or about January 5, 2006, Phil Meisinger, LLC assisted Defendants Phillip C. Meisinger III, and Shara S. Meisinger to fraudulently take title to Plaintiff's subject property and,

at the same time, obtain a loan from and gave a first mortgage to Defendant Lehman Brothers Bank FSB in the amount of $162,500 on the subject property. In addition, Phil Meisinger LLC assisted Phillip C. Meisinger III, and Shara S. Meisinger to fraudulently commence a non-payment action in the Circuit Court of Cook County, Illinois, Municipal Department, 2nd District, Case No. 20071711421 and sought to evict her in and through that proceeding."

**ANSWER:**

For its answer to Paragraph 6 of Count I of the Complaint, Lehman admits that Defendants Phillip C. Meisinger III and Shara S. Meisinger (collectively, the "Owners") acquired fee simple title to certain real property located at 5701 N. Major Avenue, Chicago, Illinois (the "Subject Property") from Plaintiff on or about January 5, 2006, admits that Lehman loaned money to Owners in connection with this acquisition, admits that Owners granted a mortgage to Lehman recorded with the Recorder of Deeds of Cook County, Illinois on March 8, 2006 as document no. 0606740111 (the "Lehman Mortgage") to secure repayment of this indebtedness, admits that the Lehman Mortgage encumbered the Subject Property, and admits that the original principal sum of the Lehman Mortgage was $162,500, but states that it is without sufficient knowledge to form a belief as to the truth or falsity of the remaining allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"7.    Defendant Phillip C. Meisinger III is an Illinois resident located at 2978 Kendridge Lane, Aurora, Illinois, 60504. Among other acts set forth throughout this Complaint, on or about January 5, 2006, Phillip Meisinger fraudulently took title to Plaintiff's property and misappropriated other cash and, at the same time, obtained a loan from and gave a first mortgage to Lehman Brothers

Bank FSB in the amount of $162,500 on the subject property.  Upon information and

belief, that mortgage remains outstanding."

**ANSWER:**

For its answer to Paragraph 7 of Count I of the Complaint, Lehman admits that Owners

acquired fee simple title to the Subject Property from Plaintiff on or about January 5, 2006, admits

that Lehman loaned money to Owners in connection with this acquisition, admits that Owners

granted the Lehman Mortgage to secure repayment of this indebtedness, and admits that the Lehman

Mortgage in the original principal sum of $162,500 encumbered the Subject Property, but states that

it is without sufficient knowledge to form a belief as to the truth or falsity of the remaining

allegations therein and, therefore, neither admits nor denies the same but demands strict proof

thereof.

> "8.      Defendant Shara S. Meisinger is an Illinois resident, located at 2978
>
> Kendridge Lane, Aurora, Illinois, 60504.  Among other acts set forth throughout this
>
> Complaint, on or about January 5, 2006, Mrs. Meisinger fraudulently took title to
>
> Plaintiff's property and, at the same time, obtained a loan from and gave a first
>
> mortgage to Lehman Brothers Bank FSB in the amount of $162,500 on the subject
>
> property.  Upon information and belief, that mortgage remains outstanding."

**ANSWER:**

For its answer to Paragraph 8 of Count I of the Complaint, Lehman admits that Owners

acquired fee simple title to the Subject Property from Plaintiff on or about January 5, 2006, admits

that Lehman loaned money to Owners in connection with this acquisition, and admits that Owners

granted the Lehman Mortgage in the original principal sum of $162,500 to secure repayment of this

indebtedness, and admits that the Lehman Mortgage encumbered the Subject Property until Owners

refinanced this indebtedness in March 2006, but states that it is without sufficient knowledge to form

a belief as to the truth or falsity of the remaining allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"9.    Defendant Joe Giglietti is an Illinois resident, located at 866 Middlebury Avenue, Aurora, Illinois, 60504."

**ANSWER:**

For its answer to Paragraph 9 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"10.    Defendant National Financial Company is or was an Illinois corporation.  The registered agent of this corporation is Konstantin B. Selikhov, with its registered office at 8928 Steven Dr., Ste. 1B, Des Plaines, Illinois, 60016."

**ANSWER:**

For its answer to Paragraph 10 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"11.    Defendant Stewart Title Company of Illinois, Inc., is an Illinois corporation, with its principal place of business located at 2055 West Army Trail Road, #110, Addison, Illinois, 60101.  The registered agent of this corporation is Leigh Curry, with its registered office at 2055 West Army Trail Road, #110, Addison, Illinois, 60101."

**ANSWER:**

For its answer to Paragraph 11 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"12.    Anthony P. Andreano and the law firm of Andreano & Lyons (collectively "Andreano") are attorneys licensed to practice law in the State of Illinois with an address at 58 North Chicago Street, Suite 509, Joliet, Illinois, 60432.  Among other acts set forth throughout this Complaint, Andreano prepared the fraudulent deed purporting to transfer title of the subject property from Plaintiff to Phillip Meisinger and Shara Meisinger on or about January 5, 2006, as well and the improper closing statements dated January 4, 2006.  Andreano is treated as an unsued co-conspirator by this Complaint, and Plaintiff reserves the right to amend the Complaint to add Andreano as a party as an additional investigation is made and completed."

**ANSWER:**

For its answer to Paragraph 12 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"13.    Upon information and belief, Defendant Lehman Brothers Bank FSB, is a foreign corporation doing business in Illinois.  Also upon information and belief, Lehman Brothers is the holder of the new first mortgage on the subject property originally in the amount of $162,500."

**ANSWER:**

For its answer to Paragraph 13 of Count I of the Complaint, Lehman admits that it is a federal savings bank which transacts business in the State of Illinois, admits that Owners granted the Lehman Mortgage, and admits that the Lehman Mortgage in the original principal sum of $162,500 encumbered the Subject Property, but denies that it is presently the holder of the Lehman Mortgage since this mortgage was refinanced in March 2006, and denies the remaining allegations therein.

"14.    Defendants "DOES" 1 through 100 are fictitious names representing individuals or legal entities, if any, having or claiming an interest in, or lien upon, the subject property or fictitious names representing other individuals or legal entities who engaged in the wrongs and schemes at issue in this lawsuit but who are not currently known.  Accordingly, Plaintiff sues these unknown Defendants as DOES 1 through 100, and reserves the right to add them by name as their identities and specific involvement is uncovered in discovery and through investigation."

**ANSWER:**

For its answer to Paragraph 14 of Count I of the Complaint, Lehman admits that Defendants "Does" are joined as defendants to this lawsuit, but states that it is without sufficient knowledge to form a belief as whether any of these individuals or entities exist and, if they do, whether they have an interest in the Subject Property or participated in the alleged "mortgage foreclosure rescue scam" that is the subject of this lawsuit and, therefore, neither admits nor denies the same but demands strict proof thereof.  Answering further, Lehman denies the remaining allegations therein.

"15.    Plaintiff and her husband purchased her home at 5701 North Major Avenue, Chicago, Illinois, in April 1976 – more than 32 years ago.  She has lived in the home continuously since that time.  Prior to the purported transfer of title to the subject property on or about January 5, 2006, Plaintiff had a mortgage with Hartford

Financial Services, Inc. ("Hartford") with a remaining principal balance of approximately $188,719.56. The mortgage appears to have been subsequently transferred to Ocwen Bank and then to Washington Mutual. Plaintiff's payments on this mortgage were approximately $1,074.00 a month. At the time, it is estimated that the subject property had a fair market value between $318,000 and $350,000."

**ANSWER:**

For its answer to Paragraph 15 of Count I of the Complaint, Lehman admits that Owners acquired fee simple title to the Subject Property from Plaintiff on or about January 5, 2006, and admits that a mortgage purportedly granted by Plaintiff to Hartford Financial Services, Inc. recorded with the Recorder of Deeds of Cook County, Illinois on December 17, 2003 as document no. 0335150091 (the "Hartford Mortgage") encumbered the Subject Property on January 5, 2006, but states that it is without sufficient knowledge to form a belief as to the truth or falsity of the remaining allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"16.    In 2005, Plaintiff fell several months behind on the payments on the Hartford mortgage. As a result, Hartford or its successors initiated foreclosure proceedings against her. Plaintiff attempted to reach a settlement but was unsuccessful. By October of 2005, Plaintiff was facing the imminent loss of her home and was seeking a way to avoid such an outcome. As her settlement discussions with Hartford continued to deteriorate, the matter became more desperate."

**ANSWER:**

For its answer to Paragraph 16 of Count I of the Complaint, Lehman admits that a mortgage foreclosure action relating to the Hartford Mortgage was filed in the Circuit Court of Cook County, Illinois on January 19, 2005, but states that it is without sufficient knowledge to form a belief as to the truth or falsity of the remaining allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"17.    Plaintiff learned of National Financial Co. through an advertisement she received in the mail.  The advertisement represented that the company could provide help to persons facing mortgage foreclosure problems.  Needing a new loan to avoid the Hartford foreclosure, Plaintiff contacted National Financial Co., and its agent Phil Grant, on or about October 31, 2005.  Plaintiff explained that she was behind on her mortgage and was looking for a way to save her home from foreclosure.  Phil Grant told Plaintiff that in order for her to stop the foreclosure and pay off her existing mortgage with Hartford, National Financial Co. had contacts with a number of "investors" who might be willing to put up the money to help her save her home.  National Financial Co. and Phil Grant called this the "Stop Sale and Buy Back Program."  Neither Phil Grant nor National Financial Co. explained any of the details of this program, nor did they explain that it would require Plaintiff to sign over the deed to the subject property.  Instead, each cryptically stated that the procedures to be used were "just a formality" that would allow Plaintiff to "stop the foreclosure" and the "keep her home."  Plaintiff was told she would be required to make monthly payments to the "investors," which would be used to make monthly payments on this new mortgage obtained by the investors until Plaintiff could get a new mortgage for her home.  She was told this was just a temporary arrangement

until she could get back on her feet and obtain new financing for the subject property. Phil Grant put Plaintiff in contact with Joseph Giglietti as a potential "investor," who in turn brought Phil Meisinger in as an investor."

**ANSWER:**

For its answer to Paragraph 17 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"18.    Hartford (or its successor) was scheduled to foreclose on the subject property on or about January 6, 2006. As Plaintiff's foreclosure sale was approaching, she asked Joe Giglietti to set up a time to close the deal with the "investors" so she could stop the foreclosure and keep her house. Joe Giglietti first arranged a "closing" to take place at Stewart Title Company of Illinois during the last few days of December 2005. At that time, Plaintiff was again told that this was all "just a formality" to allow her to keep her house. Despite her inquiries, she was not, however, told how the deal would actually work or provided copies or drafts of any proposed contracts or descriptions of how "Stop Sale and Buy Back Program" would work."

**ANSWER:**

For its answer to Paragraph 18 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"19.    The closing was scheduled in late December 2005, approximately one week before the Hartford foreclosure was scheduled to occur. At the last minute, however, Defendants or some of them caused the date and time of the proposed

closing to be delayed until January 5, 2006, at 3:00 p.m. – mere hours before the Hartford foreclosure was scheduled to take place. Plaintiff was not consulted about this scheduling change, and moving it closer to the Hartford foreclosure put stress and considerable pressure on her to find a way to keep her house. Again, she was told this would not be a problem, that this closing was "just a formality," and that she would be able to keep her house. She was repeatedly told not to worry and that everything would be fine. As before, Plaintiff was not told how the deal would actually work, nor was she provided copies or drafts of any proposed contracts or details about the "Stop Sale and Buy Back Program." Plaintiff repeatedly called Phil Grant and National Financial Co. to obtain this information, ask questions and receive additional guidance on the process by which she could save her home, but her phone calls were not returned. In the mean time, the foreclosure date was rapidly approaching."

**ANSWER:**

For its answer to Paragraph 19 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"20.    Plaintiff appeared in person at the offices of Stewart Title Company of Illinois on January 5, 2006, at around 3:00 p.m., in order to complete the transactions related to the "Stop Sale and Buy Back Program" the (sic) she was told would be necessary for her to save her house. Also present were at this meeting at Stewart Title Company of Illinois were Anthony Andreano, Phillip Meisinger III, Shara S. Meisinger, Joseph Giglietti, and a closing agent from Stewart Title. At this "closing" meeting, plaintiff was not given a contract to sign, review or approve.

Instead, Plaintiff was told by Defendants that this process was necessary for her to prevent the foreclosure and to keep her house. She was again told not to worry. No one at the meeting, however, ever explained what the "Stop Sale and Buy Back Program" process was, what the terms of the arrangement would be, or that it was actually a permanent sale of the property. Plaintiff was never told that she could or should consult with a lawyer. At the January 5, 2006 meeting, Plaintiff was presented with what she now understands to be a warranty deed transferring the subject property to Defendants Phillip Meisinger III, and Shara S. Meisinger for the supposed consideration of "TEN DOLLARS," but at the time, she was told and understood it to be another of the "formalities" that Defendants said were necessary for her to stop the foreclosure and to keep her family home. Plaintiff did not understand, and was not told, that she was signing over the deed to her house. Under these conditions, Plaintiff signed this paper, upon information and belief prepared by Andreano."

**ANSWER:**

For its answer to Paragraph 20 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief concerning the alleged events occurring at the offices of Stewart Title Insurance Company on January 5, 2006 in connection with the sale of the Subject Property to Owners (the "Closing") or Plaintiff's understanding of the legal consequences thereof and, therefore, neither admits nor denies the same but demands strict proof thereof. Answering further, Lehman denies that any of its representatives were present at the Closing, denies that it made any representations to Plaintiff, and denies the remaining allegations therein.

"21.    As in the prior discussions, Plaintiff was told during the January 5, 2006 meeting that this was "just a formality," that she should not worry, that this was

a temporary arrangement, and that by signing the documents the investor – now identified to be Defendant Phil Meisinger, LLC – would put up the money so she could keep her house and that she would have time secure a new loan to pay off the investor."

**ANSWER:**

For its answer to Paragraph 21 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"22.    Astonishingly, on January 29, 2006 – more than three weeks *after* the closing – Plaintiff was finally shown *for the first time* and told to sign a 40-page document she had never seen before, which was entitled "Real Estate Equity Sharing Agreement." Plaintiff was not given adequate time to review the document, was not represented by counsel, was not told to consult with counsel and was given no reasonable opportunity to do any of these. The cover page of the 40-page *ex post facto* contract identified Phil Meisinger, LLC as an "Investor," and while it summarily describes the lengthy terms contained therein as "Equity Sharing Title" and an "Equity Ownership Split," the cover page of the document is not entitled "Sales Contract" and does not state that is an agreement to permanently sell the subject property. Again, she was told it was just a formality. When Plaintiff asked why Joseph Giglietti and Phillip Meisinger had not presented this contract to her sooner, they said they had been too busy to do so."

**ANSWER:**

For its answer to Paragraph 22 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"23.    On both January 5 and January 29, 2006, Plaintiff was not told she was signing documents for the purpose of selling the subject property.  Instead, as always, she was told only that the process was a formality and was necessary for her to stop the foreclosure and to allow time (up to 2 years) for her to get a new mortgage in order to keep her home.  Plaintiff did not receive a completed HUD-1 settlement statement or other required documents at or before the January 5, 2005 meeting at Stewart Title Company of Illinois.  If fact, Plaintiff never received a full set of closing documents and required disclosures in connection with the transaction handled by Stewart Title of Illinois."

**ANSWER:**

For its answer to Paragraph 23 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"24.    The January 5, 2006 meeting concluded between 5:30 p.m. and 6:00 p.m. Plaintiff was told by Stewart Title she was to receive a check in connection with the transaction, but she did not know why and she did not know the amount.  Because of the late hour, however, Plaintiff was told the check could not be cut that day. Defendants put a blank piece of white paper in front of Plaintiff and demanded that she sign it to indicate her consent to allow Phil Meisinger, LLC, or Phil Meisinger to pick up the check on her behalf the next morning.  Plaintiff specifically asked Defendants to clarify that she was only giving permission for Phil Meisinger, LLC,

or Phil Meisinger to pick up the check on her behalf, and not to negotiate, cash, keep

or use it.  Having received that assurance, Plaintiff signed the blank sheet of white

paper as demanded by Defendants."

**ANSWER:**

For its answer to Paragraph 24 of Count I of the Complaint, Lehman states that it is without

sufficient knowledge to form a belief concerning the alleged events occurring at the Closing and,

therefore, neither admits nor denies the same but demands strict proof thereof.  Answering further,

Lehman denies that any of its representatives were present at the Closing, denies that it made any

representations to Plaintiff, and denies the remaining allegations therein.

"25.    Upon information and belief, Phil Meisinger, LLC, Phil Meisinger,

G&M Investments, Inc. and Joseph Giglietti have misappropriated this check for

their own use, and have had it cashed, despite having no legal right to do so.  Plaintiff

understands that this check was in the amount of $44,087.65.  Plaintiff did not ever

receive or endorse the check, nor did she ever receive any of its proceeds."

**ANSWER:**

For its answer to Paragraph 25 of Count I of the Complaint, Lehman states that it is without

sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore,

neither admits nor denies the same but demands strict proof thereof.

"26.    Upon information and belief, G&M Investments, Inc., Phil Meisinger,

LLC, Phillip C. Meisinger III, Shara S. Meisinger, Joseph Giglietti, National

Financial Company, Anthony P. Andreano, and DOES 1 through 100 have engaged

in a combinations, conspiracies and agreements to illegally and improperly, and

without full disclosure, split and divide the spoils of this scam between and among

themselves, in the form of sham fees for service, kick-backs, profit sharing and other

methods. Upon information and belief, they have engaged in this conduct repeatedly, wilfully and wantonly and with complete disregard for others such that their violations should be subject to punitive and exemplary damages."

**ANSWER:**

For its answer to Paragraph 26 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to the truth or falsity of the allegations therein and, therefore, neither admits nor denies the same but demands strict proof thereof.

"27.    On or about May 30, 2007, Defendants Phillip Meisinger and Shara Meisinger, represented by Andreano, commenced a summary proceeding for Phil Meisinger, LLC, Phillip C. Meisinger III, and Shara S. Meisinger for a non-payment action against Plaintiff in the Circuit Court of Cook County, Illinois, Municipal Department, 2nd District, Case No. 20071711421 and seeking to evict her in that proceeding. In addition, in recent weeks a real estate agent has been calling Plaintiff at Phillip Meisinger's direction claiming that she intends to inspect the house for the purpose of putting it on the market for sale. Plaintiff is in imminent danger of being thrown out of her home of 32 years, leaving her homeless. As a result of Defendants' fraudulent and illegal scheme, Plaintiff has lost title to the family home in which she has resided for 32 years and was unlawfully deprived and stripped of significant equity. Plaintiff's indebtedness, prior to falling prey to the deed-theft scam, was approximately $188,719.56 on a house believed to be worth between $318,000 and $350,000. As a result of Defendants' conduct, Plaintiff has been defrauded out of more than $100,000 of equity."

**ANSWER:**

For its answer to Paragraph 27 of Count I of the Complaint, Lehman admits that $188,749.61 was disbursed from the proceeds of the Lehman Mortgage to satisfy the indebtedness secured by the Hartford Mortgage, but states that it is without sufficient knowledge to form a belief as to whether Owners initiated a forcible entry and detainer action or otherwise attempted to evict Plaintiff from the Subject Property or whether a real estate agent has communicated with Plaintiff relating to this property and, therefore, neither admits nor denies the same but demands strict proof thereof. Answering further, Lehman denies that it engaged in any unlawful activity relating to the Subject Property, and denies the remaining allegations therein.

"28.    Upon information and belief, at all times relevant to this Complaint Defendants, and each of them, were acting as agents, servants, employees, and/or representatives of each other, and were acting within the course and scope of their agency and employment and with the full knowledge, consent, permission, authorization and ratification, either express or implied, of each of the other Defendants in performing the acts alleged in this Complaint."

**ANSWER:**

For its answer to Paragraph 28 of Count I of the Complaint, Lehman denies that it engaged in any unlawful activity relating to the Subject Property, and denies the remaining allegations therein.

"29.    Upon information and belief, each of the Defendants, including Does 1 through 100, have participated as members of an alleged trust or combination, or acted with or in furtherance of it, or aided or assisted in carrying out its purposes alleged in this Complaint, and have performed acts and made statements in furtherance of a conspiracy and other violations of law. Each of the Defendants acted both individually and in alignment with other Defendants with full knowledge of their respective wrongful conduct. As such, the Defendants conspired together,

building upon each other's wrongdoing, in order to accomplish the acts outlined in

this Complaint.  In addition to being sued in their individual capacity, Defendants are

also sued as principals, participants and aiders and abettors in the wrongful conduct

complained of, and the liability of each arises from the fact that each has engaged in

all or part of the improper acts, plans, schemes, conspiracies, or transactions

complained of herein."

**ANSWER:**

For its answer to Paragraph 29 of Count I of the Complaint, Lehman denies that it engaged

in any unlawful activity relating to the Subject Property, and denies the remaining allegations therein.

"30.    Upon information and belief, with the exception of Stewart Title

Company of Illinois, the Defendants who are corporate or legal entities are, in fact,

mere alter egos and sham corporate veils for the real owners, actors and participants

hiding behind them."

**ANSWER:**

For its answer to Paragraph 30 of Count I of the Complaint, Lehman denies the allegations

therein.

"31.    Plaintiff repeats and realleges paragraphs 1 through 30 as though fully

set forth herein."

**ANSWER:**

For its answer to Paragraph 31 of Count I of the Complaint, Lehman realleges and

incorporates herein by reference its answers to Paragraphs 1 through 30 of Defendant Lehman

Brothers Bank, FSB's Answer and Affirmative Defenses to Complaint as its answer to Paragraph

31 of this Count I as if fully set forth herein.

"32.    The deed transfer from Plaintiff to Phillip Meisinger and Shara Meisinger, although a conveyance of property on its terms, must be considered a mortgage as a matter of law.  Under §765 ILCS 905/5, "[a] deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage."  Among other things, the language of the Real Estate Equity Sharing Agreement, the representations, promises and other statements by Defendants that the transaction was temporary and "just a formality," and that Plaintiff would be able to secure another replacement mortgage and keep her house, and Plaintiff's continued occupation of the subject property demonstrates that the deed conveying the subject property was intended as a mortgage and not an absolute conveyance."

**ANSWER:**

For its answer to Paragraph 32 of Count I of the Complaint, Lehman admits that Plaintiff accurately quotes portions of Section 5 of the Illinois Mortgage Act, 765 ILCS 905/5, but states that it is without sufficient knowledge to form a belief as to whether any person or entity made any statement, promise or representation to Plaintiff and, therefore, neither admits nor denies the same but demands strict proof thereof.  Answering further, Lehman denies that it made any representations to Plaintiff, denies that the warranty deed recorded with the Recorder of Deeds of Cook County, Illinois on March 8, 2006 as document no. 0606740110 (the "Warranty Deed") constitutes a mortgage, and denies the remaining allegations therein.

"33.    To establish that a deed conveyance was meant as a security, examination may and must be made of oral testimony bearing on the intent of the parties and to a consideration of the surrounding circumstances and acts of the parties."

**ANSWER:**

For its answer to Paragraph 33 of Count I of the Complaint, Lehman states that the allegations therein constitute a legal conclusion to which no answer is required. To the extent the allegations therein misstate applicable procedural or substantive law, Lehman denies those allegations.

> "34.    Defendants' acts and statements evidenced their intent to mortgage Plaintiff's home. As described above, Defendants repeatedly stated that the transaction was "just a formality" and that Plaintiff would be able to secure another replacement mortgage and keep her house. Defendants promised Plaintiff they would help her save her property from foreclosure and stay in her home of many years."

**ANSWER:**

For its answer to Paragraph 34 of Count I of the Complaint, Lehman states that it is without sufficient knowledge to form a belief as to whether any person or entity made any statement, promise or representation to Plaintiff and, therefore, neither admits nor denies the same but demands strict proof thereof. Answering further, Lehman denies that it made any representations to Plaintiff, denies that it engaged in any unlawful activity relating to the Subject Property, and denies the remaining allegations therein.

> "35.    Accordingly, the deed transfer from Plaintiff to Phillip Meisinger and Shara Meisinger constitutes an equitable mortgage by which Phillip Meisinger and Shara Meisinger took a security interest in Plaintiff's home. It does not constitute a valid transfer of title under Illinois law."

**ANSWER:**

For its answer to Paragraph 35 of Count I of the Complaint, Lehman denies the allegations therein.

"36.    Plaintiff therefore requests a declaration that the January 5, 2006 deed transfer was a mortgage, and that she is entitled to all the rights and remedies accorded to mortgagors under Federal and State Law.  Plaintiff further requests a declaration that any security interest that Defendants purported to transfer to others, which were not bona fide purchasers or assignees, by deemed void."

**ANSWER:**

For its answer to Paragraph 36 of Count I of the Complaint, Lehman admits that Plaintiff seeks certain declaratory and other relief in this lawsuit, but denies that she is entitled to such relief against Lehman, and denies the remaining allegations therein.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense
(*Bona Fide* Purchaser)

1.    A mortgagee of realty is regarded as a purchaser, and, if the mortgage is supported by consideration and taken in good faith, the mortgagee will be protected against adverse claims of which it has no notice. Life Savings & Loan Ass'n. of America v. Bryant, 125 Ill. App. 3d 1012, 1019, 467 N.E.2d 277, 282 (1st Dist. 1984); accord Illinois Department of Conservation v. Nevois, 234 Ill. App. 3d 227, 231, 600 N.E.2d 91, 93-94 (5th Dist. 1992) ("[E]quity will not reform a deed against subsequent *bona fide* purchasers for value who have no notice of *** facts which should put them 'on inquiry.'"); Robbins v. Moore, 129 Ill. 30, 44-45, 21 N.E. 934, 937-38 (1889) ("[Mortgagees] having no notice, either actual or constructive, of any claim adverse to the title of [Mortgagor], should in equity be protected to the extent of their mortgage interest, independently of whether the paramount title to this 80-acre tract of land should be held to be in [Mortgagor] or not.").

2.    Lehman has the rights, title and interest of a *bona fide* purchaser of the Subject Property since the Lehman Mortgage is supported by consideration and was taken in good faith, and

because it was not a direct participant in, nor did it have actual or constructive notice of, the purported "mortgage foreclosure rescue scam" that is the subject of this lawsuit.

### Second Affirmative Defense
(Estoppel - Multiple Innocent Parties)

1.      When one of two innocent persons must suffer by the act of a third, he who by his conduct, act, or omission enabled the third person to occasion the loss must sustain the loss.  (See Wabash Independent Oil Co. v. King & Wills Insurance Agency (248 Ill. App. 3d 719,  725, 618 N.E.2d 1214, 1218 (5th Dist. 1993); accord Ridgeview Const. Co., Inc. v. American National Bank & Trust Co. of Chicago, 256 Ill. App. 3d 688, 691, 628 N.E.2d 1060, 1062-63 (1st Dist. 1993) ("There exists a fundamental doctrine in equity that where one of two innocent persons suffers by the fraud of a third person, the loss must fall upon the person who by his or her conduct put it in the power of such third person to cause the injury.")

2.      Any loss arising from the "mortgage foreclosure rescue scam" that is the subject of this lawsuit must be allocated to Plaintiff, not Lehman, since Plaintiff enabled the commission of this purported fraud by, among other things, executing and delivering documents relating to the Subject Property to the alleged perpetrators without first reading these documents or understanding the legal consequence thereof.

WHEREFORE, Defendant Lehman Brothers Bank, FSB prays that this Court enter judgment in its favor and against Plaintiff on Count I of the Complaint, and award such other and further relief as this Court deems reasonable and just.

### Count II

Lehman makes no answer to the claims alleged in Count II of the Complaint since no relief is sought against it therein.

### Count III

Lehman makes no answer to the claims alleged in Count III of the Complaint since no relief is sought against it therein.

### Count IV

Lehman makes no answer to the claims alleged in Count IV of the Complaint since no relief is sought against it therein.

### Count V

Lehman makes no answer to the claims alleged in Count V of the Complaint since no relief is sought against it therein.

### Count VI

Lehman makes no answer to the claims alleged in Count VI of the Complaint since no relief is sought against it therein.

LEHMAN BROTHERS BANK, FSB


By:  /s/ Robert F. Rabin_____
     One of its Attorneys

Robert F. Rabin
Robbins, Salomon & Patt, Ltd.
25 E. Washington Street, 10th Floor
Chicago, Illinois 60602
(312) 782-9000